UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
I.O.B. REALTY, INC. AND MR. ISA BRIJA,    :

                            Plaintiffs,      :      **MEMORANDUM AND ORDER**

                          v.           :      19-CV-2776 (AT) (KNF)

PATSY'S BRAND, INC., PATSY'S ITALIAN    :
RESTAURANT, INC., AND JOHN DOES 1-10,
                                :
                        Defendants.
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## PROCEDURAL BACKGROUND

The plaintiffs commenced this action for trademark infringement and unfair competition, pursuant to the Lanham Act, "15 U.S.C. §§1119, 1121, and 1125 *et seq.*," asserting jurisdiction under "15 U.S.C. §§ 1121 and 28 U. S. C. §§ 1331, 1338(a) and (b), 2201, and 2202" and seeking: (a) a "declaratory judgment of non-infringement of the mark PATSY'S for use with ovens"; (b) an order restraining the defendants "on a permanent basis from interfering with the use or registration of either or both of the Plaintiffs' respective marks"; (c) an order "to the U.S. Patent and Trademark Office directing the registration of the marks of U.S. Application Numbers" 76/649,149, 77/086,491 and 86/359,076; (d) an order requiring the defendants to serve the plaintiffs within 30 days from the order a written report "setting forth the manner and form in which the Defendants complied with the Court's order"; and (e) damages, interest, costs and reasonable attorney's fees. The defendants made a motion, "pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for entry of an order dismissing the Amended Complaint with prejudice, and, alternatively, pursuant to Fed. R. Civ. P. 12(f), for entry of an order striking certain allegations and requested relief from the Amended Complaint." Docket Entry No.46. The defendants

argued in their motion that: (1) "subject matter jurisdiction is lacking because there is no substantial controversy of sufficient immediacy and reality"; (2) "the Court should decline to exercise jurisdiction in its discretion"; (3) "the amended complaint fails to state a claim upon which relief may be granted"; and (4) "the Court should, at minimum, strike plaintiffs' impertinent matter and improper [sic] requested relief from the amended complaint." Docket Entry No. 47. Concerning the lack of subject matter jurisdiction, the defendants asserted that the plaintiffs' "allegations are simply insufficient to establish an actual controversy surrounding plaintiffs' use of the Mark and to invoke the subject matter jurisdiction of this Court" because: (i)"[w]here a plaintiff seeks a declaratory judgment of non-infringement of the defendant's trademark, no actual case or controversy exists unless the plaintiff can show that the defendant sought or threatened to seek to prohibit plaintiffs [sic] use of its mark"; (ii) "plaintiffs make no allegation that defendants sent a cease and desist letter to plaintiffs, threatened or suggested they would bring claims for trademark infringement, or even mentioned that plaintiffs' use of the Mark infringes the rights of defendants"; and (iii) "plaintiffs' sole basis for seeking declaratory relief is plaintiff's[1] filing of a Notice of Opposition to the registration of plaintiffs' Mark and a vague reference to Patsy's Brand's former counsel, Norman Zivin ['Zivin'], inquiring 'into the use of the mark PATSY'S on ovens during [Isa] Brija's deposition [in January 2018] even though neither this mark nor ovens were relevant to the pending matter."

The plaintiffs opposed the defendants' motion, arguing: (1) "the Court does have subject matter jurisdiction over this declaratory judgment action"; (2) "the amended complaint sufficiently states a claim upon which relief may be granted"; and (3) "defendants' alternative motion to strike matter from the plaintiffs' amended complaint should be denied." Docket Entry

---

[1] The Court assumes the defendants meant to say "defendants'" not "plaintiff's" "filing of a Notice of Opposition to the registration of Plaintiffs' Mark."

No. 63.  Concerning the lack of subject matter jurisdiction, the plaintiffs asserted that the defendants "maintain and continue to maintain a very aggressive litigation posture against" the plaintiffs, and the Court is permitted "to consider matters of public record regrading this past history," including the defendants' counsel "Zivin's ongoing surveillance of I.O.B. Realty's use of its mark on ovens.  Mr. Brija understood this inquiry into non-relevant subject manner to be a direct threat by Patsy's Brand to pursue trademark infringement litigation against him and IOB Realty once his licensing program for his branded ovens began.  This licensing activity has just recently begun."

On April 30, 2020, the assigned district judge granted, without prejudice, the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Docket Entry Nos. 131 and 132.  The Court determined that the plaintiffs' "claims do not present 'a case of actual controversy'" because: (a) "Defendants have neither filed suit against Plaintiffs nor threatened to do so, nor have they engaged in any other activity that would indicate an intention to sue, such as sending a cease-and-desist letter"; (b) "[a] party's refusal to sign a covenant not to sue, however, is not considered an imminent threat of suit"; (c) "Defendants do not have an obligation 'to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit'"; (d) "[t]he only substantive action Patsy's Brand has taken with respect to Plaintiffs' use of the mark PATSY'S for ovens is to oppose its registration before the TTAB [Trademark Trial and Appeal Board]"  by asserting that "the mark PATSY'S for ovens is likely to cause 'confusion, mistake or deception,'" and "such statements, 'without more,' do not 'constitute an indirect threat of an infringement suit'"; and (e) the plaintiffs' allegations that the defendants pursued aggressive litigation against them, including the defendants' former

counsel's surveillance activities "are also insufficient to demonstrate that a substantial controversy exists between the parties, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'" because "[t]he previous lawsuits and TTAB actions cited by Plaintiffs in their complaint concern trademarks and trademark applications different from the one at issue here." The court stated that it "does not reach Defendants' motions to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or to strike certain portions of the complaint under Federal Rule of Civil Procedure Rule 12(f)."

Before the Court is the defendants' motion "pursuant to 15 U.S.C.A §1117(a) and Fed. R. Civ. P. 54(d), for entry of an order finding this to be an 'exceptional case' under the Lanham Act and awarding Defendants their reasonable attorneys' fees and costs."[2] The plaintiffs oppose the motion.

## DEFENDANTS' CONTENTIONS

The defendants assert that they are the prevailing party for the fee application purpose because their motion to dismiss was granted on the subject matter jurisdiction grounds "and without prejudice is of no consequence," relying on *Beijing Daddy's Choice Sci. & Tech. Co. v. Pinduoduo Inc.,* No. 18-Civ-6504, 2020 WL 729518, at *3 (S.D.N.Y. Feb. 13, 2020)" ("Pinduoduo"). The defendants assert that this case is exceptional because: (1) the plaintiffs'

---

[2] Although the defendants assert in their notice of motion that the motion is made "pursuant to 15 U.S.C.A §1117(a) and Fed. R. Civ. P. 54(d), in their memorandum of law they assert that the motion is made "pursuant to Rule 54 of the Federal Rules of Civil Procedure ('Rules') and Section 35(A) of the Lanham Act. 15 U.S.C. § 1117(a), as well as the Court's inherent authority pursuant to 28 U.S.C. § 1927." Notwithstanding that it is improper to assert in a memorandum of law a legal basis for the motion that was not specified in the notice of motion, as required by Local Civil Rule 7.1(a)(1) of this court ("A notice of motion . . . shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion."), the defendants did not make citation to or any arguments pursuant to 28 U.S.C. § 1927 in their memorandum of law, as required by Local Civil Rule 7.1(a)(2) ("A memorandum of law [shall] set[] forth the cases and other authorities relied upon in support of the motion, and [shall be] divided, under appropriate headings, into as many parts as there are issues to be determined.").

"litigating position was extremely weak and objectively unreasonable"; and (2) the plaintiffs

"litigated this case in an unreasonable manner by purposely concealing their non-use of the

PATSY'S mark and by forcing Defendants to engage in costly and unnecessary discovery

motion practice."  According to the defendants, when they filed their complaint, the plaintiffs

"knew they had no subject matter jurisdiction because they were not using the trademark

PATSY'S in connection with branded pizza ovens," and their former counsel made

representations to the Court concerning the plaintiffs' purported use of the PATSY'S mark as the

basis to assert the existence of a case or controversy.  According to the defendants, the plaintiffs

knew, no later than the receipt of the defendants' April 24, 2019 letter outlining deficiencies in

the complaint supported by legal authorities, that subject matter jurisdiction was lacking.

Thereafter, the defendants relied on the same legal authorities in their letter to the plaintiffs and

to the Court following the amended complaint, Docket Entry No. 40, and initial briefing on a

motion to dismiss, Docket Entry No. 47, making the plaintiffs' "refusal to heed Defendants'

legal authorities and plow forward all the more unconscionable."  Thus, the plaintiffs' repeated

contention that subject matter jurisdiction exists was objectively unreasonable and supports the

finding that this is an exceptional case warranting fees.

According to the defendants, the plaintiffs "litigated this case in an unreasonable manner

by purposely concealing their non-use of their mark and by forcing defendants to engage in

costly and unnecessary discovery motion practice."  The plaintiffs "purposefully misled this

Court by repeatedly falsifying facts in an effort to create subject matter jurisdiction," starting in

the amended complaint and continuing in their representations in the memorandum of law

opposing the motion to dismiss, including their assertion that the PATSY'S mark "was in use at

the time of the filing" of the complaint.  As pointed out by the defendants, these key allegations

concerning the use of the mark "were nothing short of a complete fabrication aimed at 'cooking up' a 'case or controversy' in an attempt to avoid dismissal," when in fact "there never were any PATSY'S branded ovens," which was revealed in discovery, including Brija's admission at his deposition.  When Brija was asked if he sold any ovens under the Patsy's name, he responded: "Under the name Patsy's, do I sell any oven? I haven't sold anything yet.  But I am planning to sell."  The plaintiffs' "knowledge of their non-use of their PATSY'S mark at the time of their initial pleading demonstrates the objective unreasonableness of their jurisdictional allegations." Furthermore, the plaintiffs "produced a mere two 'doodles,' drawn in September 2019, of a theoretical PATSY'S sign that could be affixed to pizza ovens as evidence of their 'use.'" However, the doodles were the product of the plaintiffs' text messages to the oven-maker asking how much it would cost to "add a metal sign to one or two [ovens] that said 'Patsy's Brand Pizza Oven TM' and where the oven-maker could send him what he referred to in his texts as a 'mock up drawing,' 'rough mock up of the signs,' 'quick sketch of the sign for the oven,' and 'rough sketch.'"  The defendants assert that they should have never been forced to file their three discovery motions, and the plaintiff's concealment of their trademark non-use central to the jurisdictional analysis was improper.  The plaintiffs failed to disclose the key material facts repeatedly, compounding their misconduct.

The defendants assert that "the circumstances surrounding the lawsuit raise serious concerns about the plaintiffs' motivation for the lawsuit," including the twenty-years long history of litigation during which the plaintiffs "engaged in a near unprecedented pattern of vexatious litigation and civil contempt, the sole purpose of which has been to harass Defendants and their families."  The defendants contend that they "will never know with certainty what Plaintiffs' subjective motivations were for filing this lawsuit," but assert that they are certain that the

purpose of the plaintiffs' long litigation against them "has been to harass Defendants and their families."  According to the defendants,

> [t]hat Plaintiffs' motion to dismiss Defendants' appeal before the Second Circuit in the matter captioned I.O.B. Realty, Inc. v. Patsy's Brand, Inc., Dkt. No. 18-2277, was denied in January 2019 (2d Cir. Dkt. No. 59), just weeks before this case was commenced in March 2019, is at least circumstantial evidence supporting the inference that Plaintiffs' brought this case purely with illicit motivation to pressure Defendants into a settlement.

The defendants assert that the fee award would further the policy goals of compensation and deterrence.  They maintain that "[t]his lawsuit needlessly required Defendants to incur substantial time and expense in litigating a matter that had no legal merit whatsoever," and "Plaintiffs' lack of candor concerning its use of the PATSY'S mark in connection with ovens only contributed to the fees and costs expended in drafting discovery and investigating the extent of Plaintiffs' fraudulent conduct before this Court."

The defendants seek $108,756.15 in attorney's fees and $614.94 in costs.  They maintain that "[t]he Lanham Act provides that a prevailing party may also recover 'the costs of the action' and, in 'exceptional cases,' its 'reasonable attorney fees.' 15 U.S.C. § 1117(a)."  The defendants assert that none of the costs is attributable to the discovery motions, and the hourly rates and hours expended are reasonable.

In support of their fee request, the defendants submitted a declaration by their attorney, Joel G. MacMull ("MacMull") with Exhibit A, invoices for services rendered from March 28, 2019 through April 30, 2020, containing contemporaneous time entries and disbursements, Exhibit B, email correspondence between the plaintiffs and the defendants dated May 4, 2020, Exhibit C, "printouts obtained from the Trademark Trial and Appeal Board Inquiry System . . . concerning opposition proceedings before the Trademark Trial and Appeal Board ('TTAB') in

connection with Opposition No. 91221726," and Exhibit D, "email dated May 5, 2020 declining Defendants' offer to settle the matter of attorneys' fees."

MacMull states that he is a partner with the law firm Mandelbaum Salsburg P.C. and the co-chair of the firm's Intellectual Property and Brand Management Practice Group. MacMull has been admitted to practice in New York in 2005, and he specializes in intellectual property litigation, focusing on trademark litigation in federal and state courts, as well as administrative proceedings before the United States Patent and Trademark Office. In 2017, MacMull made a winning argument for his client before the Supreme Court, and in 2018 he received the "ABA's Section Intellectual Property Law Mark T. Banner Award" for his work in connection with that case. MacMull's billing hourly rate is $575. Due to an internal bookkeeping error, MacMull's initial billing hourly rate was $475 for April and May 2019, and $525 for June 2019. Additionally, a 10% courtesy discount from his usual rate was applied, for an actual billing rate of $517.50, except for $427.70 for April and May 2019, and $472.50 for June 2019. MacMull states that his hourly rate is in line with the prevailing rates in New York legal community for similar services. MacMull expended 116.6 hours working on this case, two of which were billed at a half-rate of $287.50, resulting in a total of $58,860 in fees, after a 10% discount.

Brian M. Block ("Block") is a fifth-year associate at the firm's litigation department. Block has been admitted to practice in 2014. Block was the only associate who worked on this case and bore principal responsibility for conducting initial legal research and drafting all but one of the substantive motions in this case, as well as correspondence and discovery. Block's experience includes litigating a long-running unpaid overtime wage case on behalf of the plaintiff in this district. Block's billing hourly rate was $375 in 2019, and $390 in 2020. A 10% courtesy discount was applied to his rate, for an actual billing hourly rate of $337.50 in 2019, and

$351 in 2020.  Block's rate is in line with the prevailing hourly rates in the New York legal community for similar services in this district by lawyers of comparable experience and reputation.  Block expended 162.2 hours working on this case, 11.20 of which were billed at a 2019 half-rate of $187.50 and 0.40 of which was billed at a 2020 half-rate of $195, generating a total of $52,917.30 in attorney's fees, after a 10% discount.

Alexa Tierney ("Tierney") is a paralegal in the firm's litigation department and has been with the firm since 2018.  Tierney has ten years of paralegal experience and she performed certain supervised tasks related to discovery in this case.  Tierney's billing hourly rate is $265.  A 10% courtesy discount applied in this case, for the actual billing hourly rate of $238.50, which is in line with the prevailing hourly rates in the community for similar paralegal services.  Tierney worked 5.40 hours on this case, billing $1,287.90, after a 10% discount.

According to MacMull, in addition to a 10% courtesy discount, a total of $9,309.05 in fees were written off, leaving $103,756.15, the total amount of attorneys' fees incurred by the defendants.  The defendants incurred $810.13 in costs, consisting of: (i) $111.39 in Westlaw legal research fees; (ii) $200, court fee for pro hac vice admission; (iii) $133.46 in attorney travel expenses; (iv) $10.30 in PACER access fees; (v) $82.98 in postage and delivery service fees; and (vi) $272 in photocopying expenses.  However, the defendants seek the reduced amount of $614.94 in costs because they do not seek costs incurred in connection with the discovery motions.

## PLAINTIFFS' CONTENTIONS

The plaintiffs assert that the defendants are not the prevailing party within the meaning of 15 U.S.C. § 1117(a) because this case was dismissed without prejudice, relying on "*Transp. Techs., LLC v. Los Angeles Metro. Transportation Auth.,* No. CV 15-6423, 2019 WL

2058630, at *3 n.4 (C.D. Cal. May 8, 2019)," "*Fashion Television LLC v. APT Satellite Co. Ltd.,* No. 17-CV-5413, 2018 WL 4300526, at *4 (S.D.N.Y. Sept. 10, 2018)," "*Conmed Corp. v. Lexion Med., LLC*, No. 6:16-CV-944, 2019 WL 3891026, at *3 (N.D.N.Y. Aug. 19, 2019)" and "*SnugglyCat, Inc. v. Opfer Commc'ns, Inc.*, 953 F.3d 522, 527 (8th Cir. 2020)."  They contend that courts have found that in such a circumstance no change in the legal relationship of the parties occurs.

According to the plaintiffs, "there is nothing 'exceptional' about this case," and the plaintiffs' legal position was not frivolous.  The plaintiffs maintain that they brought this lawsuit "after Defendants' former counsel questioned Plaintiffs' use of the mark for ovens in an unrelated litigation, which Plaintiffs felt portended that they would once again be facing litigation" from the defendants.  The plaintiffs' position "was that the long and hard-fought history of litigation between the parties" placed them "in an adversarial situation where the likelihood of a lawsuit on this issue created a sufficient controversy."  Moreover, the plaintiffs made citation in their opposition to the motion to dismiss to caselaw in which "a TTAB opposition can and does create a sufficient controversy where additional factors are present," as recognized by the assigned district judge, such as history of litigation that places the parties in an adversarial situation.

The plaintiffs assert that their actions in discovery were not unreasonable and the defendants did not explain why they believe that the plaintiffs' discovery efforts were inappropriate or cite any caselaw in support.  The plaintiffs sought document discovery and depositions from third parties that they believed were owners or involved with the defendants' business to inquire "about any uses Defendants may be making of trademarks including the word 'Patsy's' for ovens."  The defendants' position that the plaintiffs should have conducted no

discovery pending the motion to dismiss ignores that the motion to stay discovery was denied.
The defendants' remaining arguments rely on information outside the record, namely, they assert
that the plaintiffs' former counsel "fabricated the predicate for this case by falsely alleging that
PATSY'S mark was used *on* ovens," when "the actual use was '*in proximity to*' a pizza oven."
The plaintiffs contend that the Court should not consider information outside the record, and the
defendants' "evidence of bad faith fails" because it "consists of a handful of photos and drawings
they cherry-picked from discovery."  Considering this evidence requires the Court "to parse
through blurry images from Yelp.com and find that the 'PATSY'S' in those photos is 'in
proximity to' a pizza oven rather than directly on it."  Moreover, the defendants argue that "the
documents they now waive in front of the Court show that the trademark was not in use at
filing," but that is not the law because courts have found that "allegations of intent or preparation
to use," rather than actual use, create sufficient basis for jurisdiction.  The plaintiffs assert that
this action was not commenced to harass the defendants, since the plaintiffs "were simply
attempting to ensure that history did not repeat itself and they were not sued by [the defendants]
again."

　　　The plaintiffs assert that the fees requested are unreasonable because the defendants
cannot recover fees for unsuccessful or denied and settled motions.  MacMull billed 4.5 hours
drafting the pre-motion letter to stay discovery, which was denied the same day.  MacMull spent
54.5 hours and Block spent 31.5 hours on the discovery motions, which were amicably settled
and denied as moot.  It is unclear why MacMull, an experienced partner, took the lead on these
simple discovery motions.  The plaintiffs assert that the fees for these motions should be denied
because the defendants waived their right to them, since they made a request for fees in
connection with each discovery dispute and, after settling, did nothing to preserve these requests.

According to the plaintiffs, "recognizing as much, Defendants claim that, in settling the motions, they agreed only to bear their own 'costs' and preemptively accuse Plaintiffs of sharp practices by attempting to substitute 'costs' for 'fees.'"  No filing fees or similar expenses were incurred attendant to the discovery motions; thus, "by agreeing to bear their own costs on these motions, the intention was obviously for each party to bear" their attorney's fees.  The plaintiffs contend that the defendants' exorbitant fees on the motion to dismiss should be reduced.  MacMull spent 25.6 and Block spent an "incredible" number of hours, 84.1, on the motion to dismiss, and it is unclear why 110 hours were needed.  Furthermore, the defendants' billing practices, such as block billings which does not allow the plaintiffs to analyze them, require additional reductions, in particular MacMull's regular block billing.

    In support of the opposition, the plaintiffs submitted a declaration by their attorney, Nicole Bergstrom, with Exhibit A, "the relevant portion of an email string between counsel for the parties regarding the settlement of the discovery motions later settled by Dkt No 127," Exhibit B, "relevant excerpts of Defendants' counsel's invoices highlighted to show entries associated with the motion to stay discovery filed as Dkt No. 43 and dismissed by Dkt No. 44," Exhibit C, "relevant excerpts of Defendants' counsel's invoices highlighted to show entries associated with the Discovery Motions," Exhibit D, "relevant excerpts of Defendants' counsel's invoices highlighted to show entries associated with Defendants motions to dismiss, Dkt No. 46," Exhibit E, "relevant excerpts of Defendants' counsel's invoices highlighted to show instances of overbilling," and Exhibit F, "relevant excerpts of Defendants' counsel's invoices highlighted to show instances of block billing."

## DEFENDANTS' REPLY

The defendants contend that the plaintiffs' reliance on an unpublished opinion for the proposition that the defendants are not the prevailing party is meritless, as well as their attack on Pinduoduo because "*Pinduoduo* was only issued in February of this year and is the freshest opinion issued by this Court concerning 'prevailing party' status in the context of a fee award under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a)." Nothing in Pinduoduo indicates that dismissal was with prejudice. Moreover, "*Pinduoduo* joined the majority view that a non-merits dismissal triggers 'prevailing party' status, held by the Supreme Court, this Circuit, sister Circuits, and several district courts." The plaintiffs' attempt to introduce a non-existent "with prejudice" requirement is absent from the Supreme Court's opinion CRST Van Expedited, Inc. v. EEOC, 136 S. Ct. 1642 (2016) ("CRST"). The defendants contend that they rebuffed successfully the plaintiffs' frivolous attempt to obtain a declaratory judgment based on lack of subject matter jurisdiction, and the cases supporting "with-prejudice only" argument are inapposite, as they involve voluntary dismissal which is not marked by judicial imprimatur.

The defendants contend that the predicate for the lawsuit was meritless since the plaintiffs were "well-aware of Second Circuit case law that unequivocally demonstrated the unreasonableness of their litigation position," and the plaintiffs knew that their key allegations and representations to the Court were false at the time they commenced the litigation. Moreover, the plaintiffs' "novel contention that a 'history of litigation' supported the filing of this lawsuit is inapposite and not credible." If the plaintiffs had a reasonable apprehension about being sued following the defendants' former counsel's deposition question in an unrelated litigation on January 28, 2018, "why is that allegation completely absent from their initial Complaint?" and "why did Plaintiffs take fourteen (14) months from the time the question was asked to file suit on

March 29, 2019?"  The plaintiffs failed to make citation to any law from this circuit as the basis for this lawsuit.  The defendants contend that the plaintiffs' argument that the defendants' evidence is outside the record is also meritless because "this evidence was, in fact, proffered at length in connection [with] Defendants' merits reply," and the plaintiffs do not offer any evidence to counter the defendants' argument, asserting instead that the defendants "cherry-picked from discovery."  However, the plaintiffs "produced nothing else in discovery on this issue."  Furthermore, asserting allegations in the complaint known to be false is evidence of bad faith motivation for bringing the lawsuit.  The defendants assert that their argument is not that the plaintiffs' proceeding with discovery makes this lawsuit exceptional; rather, "it was the positions they took throughout discovery that further demonstrates [sic] why this case is exceptional, typified by forcing a wholly unnecessary motion to quash."

The defendants contend that awarding fees will deter more litigation and compensate them.  They maintain that no fees were waived, and the number of hours expended is reasonable. The plaintiffs did not litigate "a garden-variety trademark matter that did not merit the time Defendants' attorneys were forced to expend."  Furthermore, the plaintiffs' "effort to equate 'fees' with 'costs' as it relates to the Defendants' discovery motions is wrong, betraying both the agreement arrived at by the parties, as well as the plain meaning of the word 'costs' — the word Plaintiffs used in their correspondence with Defendants."  The defendants assert that the plaintiff's protest over division of labor, suggesting that only one attorney should be involved in preparing litigation documents "does not reflect how most law firms operate," and the time records reflect a reasonable division of responsibilities in this case, especially when all three discovery motions were due on the same date.  The defendants are not seeking fees for 110 hours of time spent on this litigation, and the plaintiffs failed to account for the free write-off for

Block's time explained by the defendants, amounting to $9,309.05.  At Block's discounted $337.50 hourly rate, the write-off was the equivalent of 27.6 hours.  Thus, the defendants are seeking only 82.1 hours related to their "successful motion to dismiss and pre-motion to dismiss practices."  The plaintiffs conflate many hours the defendants spent on pre-motion practice with those spent on the motion.

## LEGAL STANDARD

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a).

> "(T)he operation of the Declaratory Judgment Act is procedural only." Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617, 108 A.L.R. 1000. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.

> Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S. Ct. 876, 879, 94 L. Ed. 1194 (1950)

The Supreme Court "explained that the phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S. Ct. 764, 771 (2007).

> The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under [Chapter 22-Trademarks, Title 15 of the United States Code], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

> 15 U.S.C.A. § 1121.

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).

> In considering a claim for attorney's fees under a federal fee-shifting statute, a district court must ordinarily make two determinations. It must first determine whether the party seeking the award is in fact a prevailing party. If the party is a prevailing party, the court must then determine whether, under the appropriate standard, that party should be awarded attorney's fees.

Mr. L. v. Sloan, 449 F.3d 405, 407 (2d Cir. 2006).

## APPLICATION OF LEGAL STANDARD

The plaintiffs sought in their amended complaint a "declaratory judgment of non-infringement of the mark PATSY'S for use with ovens." Since the subject of the plaintiffs' claims concerns a trademark, the defendants seek fees under the Lanham Act, which was asserted in the amended complaint as a jurisdictional basis for this action. The plaintiffs do not challenge the Lanham Act as the basis for the defendants' fee request. Since the parties agree that the fee request is made properly under the Lanham Act, the Court will analyze it accordingly.

### *Whether the Defendants Are a Prevailing Party Under 15 U.S.C. § 1117(a)*

> Whether a litigant qualifies as a "prevailing party" constitutes a question of law warranting *de* novo review. See *Preservation Coal. of Erie Cty. v. Fed. Transit Admin.*, 356 F.3d 444, 450 (2d Cir. 2004). "Prevailing party" carries a consistent definition across the federal fee-shifting statutes. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 n.4, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). A "prevailing party" in a fee-shifting statute is "one who has favorably effected a 'material alteration of the legal relationship of the parties' by court order." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (quoting *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835). Not only must the party seeking fees "achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003) (quoting *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835).

Manhattan Review LLC v. Yun, 919 F.3d 149, 152-53 (2d Cir. 2019).

It is no longer required that

> a "prevailing party" must have obtained at least some relief on the merits. That argument is foreclosed by recent Supreme Court precedent. In *CRST Van*

*Expedited, Inc. v. E.E.O.C.*, ––– U.S. ––––, 136 S.Ct. 1642, 194 L.Ed.2d 707 (2016), the Supreme Court held that "a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party.'" *Id.* at 1651.

Id. at 153.

Congress has included the term "prevailing party" in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner. See *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 602–603, and n.4, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The Court has said that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties. *Texas State Teachers Assn., supra,* at 792–793, 109 S.Ct. 1486. This change must be marked by 'judicial *imprimatur.*' *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835."

CRST, 136 S. Ct. at 1646.

Common sense undermines the notion that a defendant cannot "prevail" unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision. The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.

Id. at 1651.

The plaintiffs' amended complaint was dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, without prejudice, as required in this circuit.  Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 122 (2d Cir. 1999) ("[W]here federal subject matter jurisdiction does not exist, federal courts do not have the power to dismiss with prejudice, even as a procedural sanction.").  Dismissal of the complaint "without prejudice" means that dismissal is not based on an adjudication of the merits of the plaintiffs' claims.  Conversely, where dismissal is based on an adjudication on the merits of the plaintiffs' claims, such dismissal is "with prejudice."  See Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1725

(2020)  ("Federal Rule of Civil Procedure 41(b), codif[ies] an old equitable principle [and] tells courts to treat the dismissal [for failure to state a claim] 'as an adjudication on the merits'— meaning a dismissal with prejudice.  *See Durant v. Essex Co.*, 7 Wall. 107, 109, 19 L.Ed. 154 (1868).").

The plaintiffs failed to make citation to any binding authority for the proposition that dismissal of the complaint must be "with prejudice" before the defendants can be found the prevailing party.  Contrary to the plaintiffs' proposition, as the Supreme Court held, the defendants "may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason."  CRST, 136 S. Ct. at 1651.  In determining whether the defendants are the prevailing party in this action, the inquiry is not whether dismissal of the amended complaint was "with prejudice," i. e. on the merits, or "without prejudice," i. e. on the nonmerits reason; rather, the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties . . . marked by 'judicial *imprimatur*.'"  Id. at 1646.

The plaintiffs sought a "declaratory judgment of non-infringement of the mark PATSY'S for use with ovens," invoking jurisdiction under the Lanham Act and seeking a remedy under the Declaratory Judgment Act.  In determining the defendants' motion to dismiss for lack of subject matter jurisdiction, the court stated: (a) "[t]he threshold question for the Court is whether Plaintiffs present 'a case of actual controversy'"; and (b) "[w]here a plaintiff seeks a declaratory judgment of non-infringement of a defendant's trademarks, no actual case or controversy exists unless the plaintiff can show that the defendant sought or threatened to seek to prohibit plaintiff's use of its mark.  *See Topp-Cola Co. v. Coca-Cola Co.,* 314 F.2d 124, 125 (2d Cir. 1963)."  The court proceeded to analyze the threshold question it formulated, finding that: (1) the amended complaint lacked allegations that the defendants filed suit against the plaintiffs, threatened to do

so or "engaged in any other activity that would indicate an intention to sue, such as sending a cease-and-desist letter"; (2) the defendants were not required to covenant not to sue the plaintiffs for infringement "at the time and place of the competitors' choosing"; (3) the defendants' statements in opposing the plaintiffs' application before the TTAB, without more, do not "constitute an indirect threat of an infringement suit"; and (4) the parties' litigation history is not sufficient "to demonstrate that a substantial controversy exists between the parties, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'" because it concerns trademarks and trademark applications not at issue in this action.  The court concluded that "[b]ecause Plaintiffs' allegations do not establish an actual case or controversy, the Court lacks subject matter jurisdiction to hear this action and dismisses the case without prejudice."

Generally, dismissal of the plaintiffs' amended complaint for lack of subject matter jurisdiction does not bar a second action as a matter of claim preclusion.  See Hughes v. United States, 71 U.S. 232, 237, 18 L. Ed. 303 (1866) ("If the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.").

> Although a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, it does preclude relitigation of the issues determined in ruling on the jurisdiction question unless preclusion is denied for some other reason. . . . Ordinarily, issue preclusion on the subject-matter jurisdiction question takes the form of a direct estoppel against a second effort to assert the same basis of jurisdiction for the same claim.
>
> 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4436 (3d ed. 2008).

In dismissing the amended complaint for lack of subject matter jurisdiction the court analyzed and resolved the threshold issue, namely, "whether Plaintiffs present 'a case of actual

controversy,'" answering it in the negative.  As it is apparent from the court's April 30, 2020 decision, the amended complaint was not dismissed based on deficiencies that are capable of being corrected by a simple filing of another amended complaint; rather, without more, a simple filing of another amended complaint based on the same claims is foreclosed by the court's conclusion and findings concerning the subject matter jurisdiction issue reached after the analysis of the allegations in the amended complaint, the parties' arguments and evidence in aid of and against subject matter jurisdiction.  The plaintiffs sought to alter the legal relationship between the parties by seeking a "declaratory judgment of non-infringement of the mark PATSY'S for use with ovens," and the defendants, in their motion to dismiss, sought to prevent the alteration to the extent it is in the plaintiff's favor.  The defendants succeeded in their challenge to the plaintiffs' amended complaint by refuting the subject matter jurisdiction asserted by the plaintiffs.  Having "rebuffed" the plaintiffs' request for a material change in the parties' relationship attempted to be obtained by the plaintiffs via a "declaratory judgment of non-infringement of the mark PATSY'S for use with ovens," by defeating the plaintiff's assertion of subject matter jurisdiction, the defendants fulfilled their "primary objective," even though the dismissal of the amended complaint was based on a nonmerits reason.  CRST, 136 S. Ct. at 1651. The plaintiffs did not dismiss their amended complaint voluntarily, and the defendants' refuting of the plaintiffs' attempt to alter materially the legal relationship of the parties was marked by judicial imprimatur, namely, the April 30, 2020 order followed by the judgment.

The Court finds that the defendants are the prevailing party for the purpose of the instant attorney's fee application under 15 U.S.C. § 1117(a).

***Whether This Is an Exceptional Case Under 15 U.S.C. § 1117(a)***

"[U]nder the Lanham Act, an exceptional case is one that stands out from others in the manner articulated by [Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554, 134 S. Ct. 1749, 1756, (2014)]."   Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 531 (2d Cir. 2018).  The Supreme Courts explained in Octane Fitness, LLC

> that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.  As in the comparable context of the Copyright Act, "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

> Octane Fitness, LLC, 572 U.S. at 554, 134 S. Ct. at 1756.

> In *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), for example, we explained that in determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a "nonexclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.,* at 534, n.19, 114 S.Ct. 1023 (internal quotation marks omitted).

> Id. at 554 n.6, 134 S. Ct. at 1756 n.6.

Under the standard set forth in Octane Fitness, LLC, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  Id. at 555, 134 S. Ct. at 1757.

> "[A]lthough *Octane* reduced the showing required for an award on the ground of objective baselessness, courts continue to hold claims of baselessness to a high bar." *Small v. Implant Direct Mfg. LLC*, No. 06 Civ. 683 (NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014). Indeed, "most post-*Octane* cases

awarding fees continue to involve substantial litigation misconduct." *Hockeyline, Inc. v. STATS LLC*, No. 13 Civ. 1446 (CM), 2017 WL 1743022, at *5 (S.D.N.Y. Apr. 27, 2017); *see also e.g.*, *Small*, 2014 WL 5463621, at *3 (collecting cases); *Gametek LLC v. Zynga, Inc.*, No. 13 Civ. 2546 (RS), 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (same). The Court has adopted the same approach in its own post-*Octane* cases. *See, e.g.*, *Pirri v. Cheek*, No. 19 Civ 180 (PAE), 2020 WL 2520593, at *10–12 (S.D.N.Y. May 18, 2020) (awarding fees pursuant to § 285 where "in the Court's more than eight-and-one-half years on the bench, [plaintiff's] filings stand apart from those of other failed civil plaintiffs for the sheer lack of colorable factual (or legal support); for their tendentious, bizarre, non-responsive and caustically accusatory arguments; and for their disregard for, and selective presentation of, evidence"); *Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 Civ. 224 (PAE), 2018 WL 3574864, at *11 (S.D.N.Y. July 25, 2018) (awarding fees where, *inter alia*, head of plaintiff company explicitly expressed to its outside counsel "an intention to pursue frivolous litigation with the intent of driving up its adversary's costs").

Scott Blair v. Alstom Transp., Inc. & Kawasaki Rail Car, Inc., No. 16 Civ. 3391, 2020 WL 4504842, at *7 (S.D.N.Y. Aug. 5, 2020).

The defendants assert that this case is exceptional because: (1) the plaintiffs' "litigating position was extremely weak and objectively unreasonable"; and (2) the plaintiffs "litigated this case in an unreasonable manner by purposely concealing their non-use of the PATSY'S mark and by forcing Defendants to engage in costly and unnecessary discovery motion practice." The plaintiffs assert that: (a) their "legal position was not frivolous" in light of "the long and hard-fought history of litigation between the parties" and their actions in discovery "were not unreasonable"; and (b) the Court should not consider evidence outside the record and the defendants' "evidence of bad faith fails."

On April 24, 2019, the defendants sent a letter to the plaintiffs, informing the plaintiffs of their intent to make a motion to dismiss the complaint because: (i) "Counts One and Two for a declaratory judgment of non-infringement of the alleged PATSY's mark for ovens is, as a matter of law, barred because the Court does not have subject matter jurisdiction over those claims," since the Second Circuit "held that a district court has no jurisdiction over a declaratory

judgment action where the dispute between the parties is the 'plaintiff's right to register its trademark' and all 'the defendant has done is to file a notice of opposition' in the administrative proceeding on the basis of a likelihood of confusion," making citation to Topp-Cola Co. v. Coca-Cola Co., 314 F.2d 124, 125-26 (2d Cir. 1963); and (ii) "Count three for 'tortious interference with prospective economic opportunities' is barred pursuant to Fed. R. Civ. P. 12(b)(6), i.e. failure to state a claim upon which relief can be granted" because "the Complaint fails to identify even a single business relationship with a specific third party that was allegedly interfered with by defendants."  Docket Entry No. 40, Exhibit A.

On April 29, 2019, the plaintiffs informed the defendants that: (a) they "will withdraw Count 3 and seek to amend the Complaint as a matter of course"; (b) "Counts 1 and 2 are not based upon the opposition proceeding against the 'registration' of the mark PATSY'S for ovens," but on the defendants' "aggressive litigation against the Plaintiffs' 'use' of the Plaintiffs' marks for many years," referencing "[t]he hearing on January 6, 2015," involving the representation made by the defendants' attorney Zivin to the court "that the Defendants could not 'live with' or accept Plaintiffs use of the mark PATSY'S on ovens"; (c) "[t]he substantial fact that is now different from the commercial activities at the time of the January 6, 2015, hearing is that the Plaintiffs' PATSY'S brand ovens are now being sold in commerce.  In very recent years, five ovens bearing the PATSY'S mark have been sold to others and are in public operation and often public view"; and (d) "[t]he sale of the PATSY'S brand ovens is recent, ongoing, and expected to be significant in the industry."  Docket Entry No. 40, Exhibit A.  During Brija's January 28, 2018 deposition in this action, when asked "Do you sell any ovens under the name Patsy's?," he responded: "Under the name Patsy's, do I sell any oven? I haven't sold anything

yet.  But I am planning to sell."  Docket Entry No. 48-2, Tr. 60:1-5.  The plaintiffs filed their

amended complaint on May 28, 2019, alleging, inter alia:

> The mark PATSY'S has been in use by Mr. Brija and his businesses and franchisees for ovens since about 2015.  Mr. Brija licenses this mark for use with ovens, which are for sale to pizzerias, including to the Patsy's Pizzeria franchisees.  Mr. Brija has expended considerable sums of money as well as the time and effort of his agents in associating the trademark to the ovens sold and offered for sale under this mark to pizzerias.

Docket Entry No. 26, ¶ 22.

> Patsy's Brand has pursued an aggressive policy of trademark litigation against the Plaintiff, including its principal and related business entities.  Patsy's Brand initiated in this district civil action number 99-cv-10175 against the Plaintiff in October 1999.  Patsy's Brand initiated in the United States District Court for the Eastern District of New York Civil Action Number 06-cv-5857, the conclusion of which resulted in the cancellation of Patsy's Brand's two asserted U.S. Trademark Registrations, Number 3,009,836 for the stylized mark PATSY'S PR for restaurant services, and Number 3,009,866 for the unstylized mark PATSY'S for restaurant services.  In Civil Action Number 16-cv-7682, brought by I.O.B. Realty, Patsy's Brand won the action by receiving a determination from this Court that it did not infringe I.O.B. Realty's asserted mark. Yet, Patsy's Brand continued to the litigation by appealing the decision in order to obtain other bases for the Court's decision.

Docket Entry No. 26, ¶ 26.

> During this most recent civil action, Patsy's Brand's attorney, Mr. Zivin, inquired into the use of the mark PATSY'S on ovens during Mr. Brija's deposition even though neither this mark nor ovens were relevant to the pending matter.  At the time of this deposition, the mark PATSY'S was not in use on ovens.

Docket Entry No. 26, ¶ 27.

> Patsy's Brand uses each of the marks PATSY'S PR SINCE 1944 (Stylized) and PATSY'S OF NEW YORK or formatives thereof in this Judicial District and asserts each of these marks against the use and against the registration by the Trademark Office of Mr. Brija's mark PATSY'S for ovens as being "likely to cause confusion, mistake or deception" in view of the Defendants' PATSY'S PR SINCE 1944 (Stylized) and PATSY'S OF NEW YORK marks. (Exhibit 8, Notice of Opposition Number 91/221,726.)

Docket Entry No. 26, ¶ 28.

I.O.B. Realty now benefits from the sales of ovens licensed under its mark PATSY'S. These ovens bear the mark PATSY'S and are often located in pizzerias wherein the ovens bearing the mark are in view of the public. This use of the mark PATSY'S on ovens is recent and public and, therefore, the threat of another civil action by Patsy's Brand asserting its trademarks against I.O.B. Realty's use of the mark PATSY'S on ovens is real and immediate. The basis for such another civil action brought by Patsy's Brand against I.O.B. Realty will by necessity include an assertion by Patsy's Brand that I.O.B. Realty's mark is "likely to cause confusion, mistake or deception" in view of the Defendants' PATSY'S PR SINCE 1944 (Stylized) and PATSY'S OF NEW YORK marks. This assertion has already been made by Patsy's Brand to the Federal Government in the opposition proceeding identified above. Patsy's Brand has never suggested that its assertion would not be used in another civil action against I.O.B. Realty once I.O.B. Realty was involved in the sales of ovens licensed under its mark PATSY'S for use with ovens.

Docket Entry No. 26, ¶ 29.

The continued existence of the Patsy's Brand registration for the mark PATSY'S OF NEW YORK blocks registration by the Trademark Office of (1) I.O.B. Realty's two pending applications for the mark PATSY'S PIZZERIA for restaurant services and franchising services and (2) Mr. Brija's pending application for the mark PATSY'S for ovens. The continued existence of the Patsy's Brand registration for the mark PATSY'S PR SINCE 1944 (Stylized) is also used to block registration of Mr. Brija's pending application for the mark PATSY'S for ovens. The lack of registrations for the marks PATSY'S PIZZERIA and PATSY'S harms the ability of I.O.B. Realty and Mr. Brija to acquire franchisees and expand the franchising of its pizzerias.

Docket Entry No. 26, ¶ 30.

The plaintiffs argue in their opposition to the instant motion that their "claim was *not* that the TTAB opposition alone created a controversy," but "that the long and hard-fought history of litigation between the parties" that "placed the parties in an adversarial situation where the likelihood of a lawsuit on this issue created a sufficient controversy," and they made citation to cases in their opposition to the motion to dismiss, and the court recognized, that "there *are* situations where a TTAB opposition can and does create a sufficient controversy where additional factors are present." However, the court "ultimately distinguished these cases and found that the line had not been crossed here." The plaintiffs are correct that they alleged in the

amended complaint not only that the defendants opposed their application with the TTAB but
also that a long history of litigation exists between the parties concerning trademarks.  Since the
plaintiffs asserted, as the basis for subject-matter jurisdiction, not only that the defendant
opposed their application with the TTAB, but also that the parties' long litigation history is an
additional factor upon which subject matter jurisdiction is based, Topp-Cola Co. does not bar
automatically the plaintiffs' assertion of subject matter jurisdiction.  That is because in Topp-
Cola Co., "[a]ll that the defendant has done is to file a notice of opposition in the Puerto Rican
proceedings.  While one of the bases of the opposition is that the plaintiff's mark is confusingly
similar to the defendant's, the filing of an opposition in a local registration proceeding is not by
itself a charge or warning of a future charge of infringement." 314 F.2d at 125-26.  Given that,
unlike in Topp-Cola Co., the plaintiffs alleged in this action an additional factor as the basis for
subject matter jurisdiction, namely, the parties' long litigation history, the Court finds that the
plaintiffs' position was not frivolous or factually unreasonable.

 Moreover, the plaintiffs' assertions were not legally unreasonable because the plaintiffs,
in their opposition to the motion to dismiss, made citation to cases in which courts found that the
existence of additional factor(s), apart from the defendant's opposition to the plaintiff's TTAB
application, warranted the finding of subject matter jurisdiction, such as: (1) a threat of future
litigation via a cease and desist letter in Classic Liquor Importers, Ltd. v. Spirits Int'l B.V., 151
F. Supp.3d 451, 457 (S.D.N.Y. 2015) (The defendants opposed the plaintiff's application with
the TTAB and sent a cease and desist letter stating that if the plaintiff does not cease and desist
from using the mark for which it applied with the TTAB, the defendant will "vigorously protect[]
its trademarks"); (2) a cease and desist letter sent to the plaintiff threatening future action was
followed by an opposition to the plaintiff's application with the TTAB in Sasson v. Hachette

Filipacchi Presse, 15-CV-00194, 2016 WL 1599492, at *1-2 (S.D.N.Y. Apr. 20, 2016); and (3) "the history between the parties, including the TTAB opposition and cease-and-desist letters sent to [the plaintiff's] customers" persuaded the court that subject matter jurisdiction existed in American Time Exchange, LLC v. Tissot SA,17-CV-4737, 2017 WL 4712634, at *1 (S.D.N.Y. Sep. 27, 2017).  Although in this case the defendants did not send a cease-and-desist letter in addition to opposing the plaintiffs' application with the TTAB, the plaintiffs attempted to make an analogy between the factual circumstances in the cases they cited and the additional factor of the parties' long litigation history, albeit unsuccessfully.

Furthermore, that the plaintiffs' allegations in the amended complaint may seem contradictory, and not consistent with Brija's deposition testimony to the defendants, does not establish that the factual allegations in the amended complaint are frivolous or unreasonable.  Cf. Classic Liquor Importers, Ltd., 151 F. Supp.3d at 455 (subject matter jurisdiction was found where the plaintiff's failure to allege in the complaint that it brought its product to market seemed to be undermined by a sworn representation that the plaintiff has been shipping and selling products under the mark at issue).  The Court is not convinced that the plaintiffs' representations concerning the use of the mark PATSY'S "were nothing short of a complete fabrication aimed at 'cooking up' a 'case or controversy' in an attempt to avoid dismissal" or that the plaintiffs' "knowledge of their non-use of their PATSY'S mark at the time of their initial pleading demonstrates the objective unreasonableness of their jurisdictional allegations."  In determining the motion to dismiss, the court did not address or make any findings on the plaintiffs' "non-use of their PATSY's mark" as it relates to the subject matter jurisdiction nor was the court's dismissal for lack of subject-matter jurisdiction based on the plaintiffs' "non-use of their PATSY's mark."  Thus, the defendants' argument that this action is exceptional because

the plaintiffs litigated this case in an unreasonable manner by concealing "their non-use of the PATSY'S mark" is rejected as meritless, as that issue was neither considered by the court nor such finding made on the record in this case.  Similarly, the defendants' argument that the plaintiffs litigated this case in an unreasonable manner by "forcing Defendants to engage in costly and unnecessary discovery motion practice" is rejected as meritless in light of the fact that the defendants' motion to stay all discovery pending the outcome of the defendants' "anticipated motion to dismiss" was denied on August 13, 2019.  See Docket Entry No. 44.  Since the court's August 13, 2019 order made clear that "[t]he Court does not stay discovery pending its resolution of any motion," no basis or reason existed to prevent the parties from conducting discovery pending the resolution of the motion to dismiss.

The defendants argue that "the circumstances surrounding the lawsuit raise serious concerns about plaintiffs' motivation for filing suit," making citation to: (a) Gust, Inc. v. AlphaCap Ventures, LLC, 226 F. Supp.3d 232, 241 (S.D.N.Y. 2016), rev'd, 905 F.3d 1321 (Fed. Cir. 2018), in which the court found that "the manner in which [the plaintiff] litigated its claim was unreasonable, insofar as [the plaintiff's] goal was to extract a nuisance settlement [from the defendant]"; and (b) Lumen View Tech., LLC v. Findthebest.com, Inc., 24 F. Supp.3d 329, 336 (S.D.N.Y. 2014), in which the court found that the plaintiff's "motivation in this litigation was to extract a nuisance settlement from [the defendant] on the theory that [the defendant] would rather pay an unjustified license fee than bear the costs of the threatened expensive litigation."  Unlike in the cases cited by the defendants, no mention or evidence of any settlement exists in this case or any finding concerning any settlement or the plaintiffs' motivation for the suit, let alone any evidence or finding that the plaintiffs' motivation for this suit "was to extract a nuisance settlement."  The defendants concede that they "will never know with certainty what Plaintiffs'

subjective motivations were for filing this lawsuit," but assert that they are certain that the purpose of the plaintiffs' long litigation against them "has been to harass Defendants and their families."  The Court rejects the defendants' self-serving and unsupported conjecture that the plaintiffs' dismissal of the appeal in an unrelated case "just weeks before this case is commenced in March 2019, is at least circumstantial evidence supporting the inference that Plaintiffs' brought this case purely with illicit motivation to pressure Defendants into a settlement."  The record in this case shows that the parties have a long history of litigation, as well as a history of accusing one another of improper conduct and harassment.  However, the long history of litigation between the parties alone is not sufficient to find an improper motive existed for commencing this action, and the "circumstantial evidence" offered by the defendants is rejected as self-serving and uncorroborated.  The Court is not convinced that awarding fees in the circumstance of this case would further the policy goals of compensation and deterrence.

Courts have found cases to "stand out" as to be exceptional under the Octane totality of circumstances standard where, for example: (i) evidence corroborated attorney admission that he commenced the suit in bad faith and the party's continued Lanham Act violations throughout discovery, Benihana of Tokyo, LLC v. Benihana, Inc., No. 14 Civ. 224 (PAE), 2018 WL 3574864, at *10 (S.D.N.Y. July 25, 2018), aff'd, 771 F. App'x 71 (2d Cir. 2019) ("[T]his case contains the rarest of direct evidence of bad faith: an admission to this effect by the lawyer who brought this lawsuit on behalf of a party whose conduct is claimed to have been in bad faith."); (ii) the court found "obstructive tactics" and "many abuses" including "willful concealment of business entities and profit distribution agreements, which required this Court to issue an adverse inference instruction," violation of the court's orders, and an "incomprehensible decision to plead 52 affirmative defenses . . . knowing that many had been stricken" in a prior case, John

Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 643 (S.D.N.Y. 2018); and

(iii) the plaintiffs' arguments were frivolous, their "litigation conduct has also been troubling"

and they made misleading representations to the court, Manhattan Review LLC v. Yun, No. 16

Civ. 0102(LAK)(JCF), 2017 WL 11455317, at *7 (S.D.N.Y. Sept. 21, 2017), subsequently aff'd,

919 F.3d 149 (2d Cir. 2019), and subsequently aff'd, 765 F. App'x 574 (2d Cir. 2019).  The Court

finds that no substantial litigation misconduct occurred in this case as to make this case "stand

out" as exceptional under the Octane standard, and this case does not qualify as a "rare case in

which a party's unreasonable conduct—while not necessarily independently sanctionable—is

nonetheless so 'exceptional' as to justify an award of fees."  Octane, 572 U.S. at 555, 134 S. Ct.

at 1757; see Scott Blair, 2020 WL 4504842, at *8 (the plaintiff's "claims 'though weak, were

within the bounds of zealous advocacy.'").   Accordingly, upon examining the totality of the

circumstances, the Court finds that this is not an exceptional case warranting attorney's fees

under 15 U.S.C. § 1117(a).

***Costs***

The defendants seek $614.94 in costs, which MacMull asserts is the reduced amount

from a total of $810.13, incurred in this action for "court fee for *pro hac vice* admission,"

"attorney travel expenses," "PACER access fees," "postage and delivery service fees" and

"photocopying expenses."  The defendants assert that "[t]he Lanham Act provides that a

prevailing party may also recover 'the costs of the action' and, in 'exceptional cases,' its

'reasonable attorney fees.' 15 U.S.C. § 1117(a)."  However, unlike providing for attorney's fees

in exceptional cases, the Lanham Act provides that "the plaintiff shall be entitled . . . to recover

. . . the costs of the action" only "[w]hen a violation of any right of the registrant of a mark

registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this

title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter."  15 U.S.C.A. § 1117(a).  Since the defendants are not the plaintiffs and no violation of any rights shall have been established, awarding costs of the action to the defendants under 15 U.S.C.A. § 1117(a) in this circumstance is not warranted.

The defendants failed to comply with Local Civil Rule 7.1(a)(2), requiring that the memorandum of law sets forth "the cases and authorities relied upon in support of the motion" in connection with their request for costs because, in the "Argument" section of their memorandum of law, they did not make citation to Rule 54 of the Federal Rules of Civil Procedure, specified in the defendants' notice of motion, or related caselaw or made Rule 54-related arguments.

"Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).

> The Supreme Court has interpreted costs under Rule 54(d)(1) to mean those enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). Under 28 U.S.C. § 1920, there are six categories of costs: (1) "[f]ees of the clerk and marshal," (2) "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," (3) "[f]ees and disbursements for printing and witnesses," (4) "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," (5) "[d]ocket fees under section 1923 of this title," and (6) "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920.

> Scott Blair, 2020 WL 4504842, at *9.

Local Civil Rule 54.1(a) this court provides:

> Within thirty (30) days after the entry of final judgment, or, in the case of an appeal by any party, within thirty (30) days after the final disposition of the appeal, unless this period is extended by the Court for good cause shown, any party seeking to recover costs shall file with the Clerk a notice of taxation of costs by Electronic Case Filing, except a pro se party may do so in writing, indicating the date and time of taxation which shall comply with the notice period prescribed by Fed. R. Civ. P. 54, and annexing a bill of costs.

Local Civil Rule 54.1(b) this court provides:

> A party objecting to any cost item shall serve objections by Electronic Case Filing, except a pro se party may do so in writing, prior to the date and time scheduled for taxation. The parties need not appear at the date and time scheduled for taxation unless requested by the Clerk. The Clerk will proceed to tax costs at the time scheduled and allow such items as are properly taxable. In the absence of written objection, any item listed may be taxed within the discretion of the Clerk.

.
The defendants are the prevailing party in this action.  To the extent that any of the above costs sought by the defendants are taxable costs, the defendants shall present a bill of costs to the Clerk of Court in accordance with Local Civil Rule 54.1 of this court.

## CONCLUSION

For the foregoing reasons, the defendants' motion for attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a), Docket Entry No. 138, is denied.

Dated: New York, New York                               SO ORDERED:
       September 13, 2020

                                                            *Kevin Nathaniel Fox*
                                               KEVIN NATHANIEL FOX
                                               UNITED STATES MAGISTRATE JUDGE